

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00764-CR

Kiona F. **BOUTANG**,
Appellant

v.

The **STATE** of Texas,
Appellee

From County Court at Law No. 9, Bexar County, Texas
Trial Court No. 314520
Honorable Walden Shelton, Jr., Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Steven C. Hilbig, Justice (not participating)
Marialyn Barnard, Justice

Delivered and Filed:  February 27, 2013

AFFIRMED

Appellant Kiona F. Boutang appeals her conviction for driving while intoxicated. Boutang was sentenced to six months confinement in the Bexar County Jail, suspended for a period of eighteen months, and ordered to pay a fine of $500.00.  On appeal, Boutang argues: (1) the trial court violated her rights under the Confrontation Clauses of the United States and Texas Constitutions by overruling her objection to the testimony of the State's witness, Deborah Stephens, the admission of the breath test results, and breathalyzer maintenance reports; (2) the trial court committed harmful error by allowing the State to commit the venire to always

consider the results of a breath test; and (3) the trial court erred in failing to instruct the jury to consider whether the arresting officer had probable cause to arrest Boutang. We affirm the trial court's judgment.

## BACKGROUND

On January 9, 2010, at approximately 2:30 a.m., Boutang was pulled over by San Antonio Police Officer Ben Esquivel for traveling the wrong way on a one-way street. During the stop, Officer Esquivel requested she perform standardized field sobriety tests. No video of these tests was taken. After determining Boutang showed signs of intoxication while performing the tests, Officer Esquivel placed Boutang under arrest for driving while intoxicated. She voluntarily gave two breath samples, which showed her blood alcohol level was above the State's legal limit.

Boutang filed a motion to suppress the breath test results and any testimony concerning these results. During the pretrial suppression hearing, the State called Deborah Stephens to testify. Stephens is a senior forensic scientist and technical supervisor with the Bexar County Breath Testing Program. She is the custodian of records for all the breathalyzer machines in Bexar County. Stephens testified she began employment with Bexar County Breath Testing as a technical supervisor in August 2011. Stephens was employed by the City of Austin (also as a technical supervisor) on the date Boutang was placed under arrest and administered a breath test.

At the time of Boutang's arrest, George McDougall was responsible for maintaining the Intoxilyzer 5000 machines in Bexar County. His duties included creating a reference solution for use in the machines, periodically changing out the solution in the machines, setting the machines to anticipate the particular amount of alcohol in the reference solution, and creating records to reflect the same. Stephens testified she recently assumed the position of senior

forensic analyst after McDougall retired. As the current technical supervisor, Stephens is the custodian of records. Stephens testified the records are maintained in accordance with DPS regulations.

During trial,[1] Stephens sponsored the admission of State's Exhibits 10, 11, and 12. State's Exhibit 10 is the breath test slip printed by Officer Charles Marcus, who was in charge of administering Boutang's breath test on the night of her arrest. Exhibit 10 indicates Officer Marcus obtained two samples from Boutang, reflecting alcohol concentrations of 0.141 and 0.144, both above the legal limit. Exhibit 10 established the Intoxilyzer was set to anticipate a 0.080 reading from the reference solution and measured the solution at 0.077 on the night that Officer Marcus administered Boutang's breath test.

Stephens testified about the preparation of the reference solution. She testified that at least once a month the technical supervisor is required to inspect the reference solution to ensure the machine is operating properly; however, the particular machine used to test Boutang's breath is inspected twice a month because of the machine's frequent use.

State's Exhibits 11 and 12 show McDougall tested the reference solution on two different dates prior to Boutang's arrest. Stephens testified the maintenance records were kept pursuant to state regulations. She also testified she believed the machine used to test Boutang's breath was working properly because State's Exhibit 10 shows Officer Marcus operated the machine correctly and because State's Exhibits 11 and 12 show the machine was reading the reference solution correctly.

Officer Marcus testified he was certified to administer the breath test with the Intoxilyzer 5000 on the date Boutang was arrested. Officer Marcus testified he administered Boutang's

---

[1] Boutang's original jury trial ended in a mistrial because the jury was unable to reach a verdict. The testimony referenced in this opinion pertains only to the second trial.

breath test and monitored Boutang for fifteen minutes before administering the test to ensure she had no residual alcohol in her mouth. He further stated he ran the self-diagnostic check on the machine. Finally, Officer Marcus testified he administered the test, the machine properly flushed out the chamber between samples, and the machine measured the reference solution within the allowable range.

The jury found Boutang guilty of driving while intoxicated. The trial court placed Boutang on community supervision. Boutang timely appealed.

## ANALYSIS

On appeal, Boutang raises issues relating to alleged errors involving: (1) her rights under the Confrontation Clauses of the United States and Texas Constitutions, (2) voir dire, and (3) jury instructions. We begin with the constitutional issue.

### *Confrontation Clause*

Boutang first argues the trial court violated her rights under the Confrontation Clauses of the United States and Texas Constitutions by overruling her objection to the testimony of Deborah Stephens, an alleged surrogate analyst who was not employed during the time Boutang's breath sample was provided and analyzed, and the admission of the breath test results and breathalyzer maintenance reports.

A defendant has a constitutional right to confront the witnesses against her. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Out-of-court testimonial statements by witnesses are barred under the Confrontation Clause unless the witnesses are unavailable and defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Wall v. State*, 184 S.W.3d 730, 735 (Tex. Crim. App. 2006).

*Standard of Review*

We must defer to a trial court's resolution of credibility issues and issues of historic fact. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). However, whether an out-of-court statement is testimonial or not is a question of law and subject to de novo review. *Id.*

*Breathalyzer Test Results*

The United States Supreme Court recently addressed a similar issue in *Bullcoming v. New Mexico*. 131 S.Ct. 2705 (2011). In *Bullcoming*, the Supreme Court held the defendant's confrontation rights were violated when the State was allowed to introduce into evidence a forensic lab report certifying Bullcoming's blood alcohol content ("BAC") when the State did not use the testimony of the analyst who had created the report as the sponsoring witness, but used a different analyst to sponsor the report. 131 S.Ct. at 2715–16.

The report was a "certificate of analyst" created by a New Mexico Department of Health, Scientific Laboratory Division intake employee, Curtis Caylor, who had received the blood sample sent to the lab. *Id.* at 2710. In Caylor's report, he stated the defendant's BAC, certified "[t]he seal of th[e] sample was received intact and broken in the laboratory," and affirmed "the statements in [the analyst's block of the report] are correct," and he had "followed the procedures set out on the reverse of th[e] report." *Id.* Caylor also certified he performed a particular test on the defendant's sample and that no condition affected the integrity of the sample to his knowledge. *Id.* at 2714. However, a different analyst testified at trial about Caylor's report. The Court concluded, "[t]hese representations, relating to past events and human actions not revealed in raw, machine-produced data," were the type of testimonial statements that required the in-court testimony of Caylor. *Id.* A different analyst "could not convey what Caylor knew or observed about the events his certification concerned, i.e., the particular test and testing process

he employed," and, thus, the defendant's rights under the Confrontation Clause were violated. *Id.* at 2715.

The report in *Bullcoming* was more than just a signed print-out from a machine; it was a written report created by an analyst that included the analyst's own certifications and conclusions. Here, on the other hand, the report admitted as Exhibit 10 included no such representations. Rather, Exhibit 10 was a machine-generated print-out that displayed the breathalyzer's calculations.

Boutang argues that in order for a breath test result to be admissible, the State must show, among other things, that the machine functioned properly on the day of the test. *See Harrell v. State*, 725 S.W.2d 208, 209 (Tex. Crim. App. 1986). She argues that McDougall, as the person in charge of maintaining the Intoxilyzer machine used to perform Boutang's breath test and the reference solution used in it, was the only witness who could provide evidence as to the proper functioning of the machine. Boutang further argues McDougall's failure to testify rises to a violation of Boutang's rights under the Confrontation Clause. We disagree with Boutang's argument.

The only "statement" from McDougall found in the breath test results report is the line noting "reference predicted 0.080," which means the Intoxilyzer machine should read the reference solution to have such concentration. However, we do not find this statement to be testimonial in nature or necessary to "establish or prove past events potentially relevant to later criminal prosecution." *See Davis v. Washington*, 547 U.S. 813, 822 (2006) (noting statements are testimonial when primary purpose is to establish or prove past events for use in criminal prosecution). Ultimately, it is the Intoxilyzer machine itself, not an individual, which reads the concentration of the reference solution, despite the number predicted by the technical supervisor.

Neither the Texas Court of Criminal Appeals nor any appellate court in this State has required the State to produce the actual person who mixed a reference solution for an Intoxilyzer machine before the breath-test results can be admitted in court. *See Harrell*, 725 at S.W.2d at 209–10 (requiring prosecution to show "the existence of periodic supervision over the machine and operation by one who understands scientific theory of the machine [] and [] proof of the result of the test by a witness or witnesses qualified to translate and interpret the result so as to eliminate hearsay," but not expressly requiring they be same person). That is, the State need only produce a witness competent to testify as to the truth of the report's statements. *See Bullcoming*, 131 S.Ct. at 2709. Stephens testified she was certified as an Intoxilyzer operator and was familiar with the machine's maintenance, calibration, and functioning. Thus, as an expert familiar with the maintenance of Intoxilyzer machines and lab procedures associated with its maintenance, Stephens testified as to the maintenance of the machine and what the particular numbers meant on the report. She did not testify she prepared or created a report that was actually created by another analyst, nor was she certifying such a report based on the machine's results. Rather, Stephens was interpreting the results from the machine's own print-out. Also, we must note that when administering a breathalyzer test to determine BAC, there is no similar concern of what "particular test and testing process" was used as there was in *Bullcoming* when an analyst is testing a blood sample for BAC—there is only one type of breathalyzer test.

Furthermore, the Second Court of Appeals, in *Settlemire v. State*, 323 S.W.3d 520 (Tex. App.—Fort Worth 2010, pet ref'd), answered the same issue presented here and, without specifically deciding if the reports were testimonial or not, found the admission of the intoxilyzer maintenance records and breath test results did not violate the appellant's confrontation rights.

In *Settlemire*, the technical supervisor who was not in charge of the machine when Settlemire was arrested testified and "sponsored" the test results and maintenance records at trial. *Id.* at 521. On appeal, Settlemire contended the intoxilyzer maintenance records and breath test results were testimonial in nature and the trial court erred in admitting those records over his objection, violating his right to be confronted by witnesses against him as guaranteed by the Sixth Amendment. *Id.* In concluding there was no Confrontation Clause violation, the *Settlemire* court, pointing to a footnote from the Supreme Court's decision in *Melendez-Diaz*, stated:

> [The witness] who testified about the intoxilyzer's status although she did not supervise it at the time of Settlemire's intoxilyzer test, is precisely the type of analyst the Court anticipated might be challenged based on its holding in *Melendez-Diaz*. The Court made clear, however, that it did not intend its holding to "sweep[] away an accepted rule governing the admission of scientific evidence." We shall not construe *Melendez-Diaz* as doing what the Court clearly stated it was not doing.

*Id.* at 522 (internal citations omitted). Here, as in *Settlemire*, Stephens also "testified about the intoxilyzer's status although she did not supervise it at the time of [appellant's] intoxilyzer test." *See id.* This is the same scenario the *Settlemire* court concluded did not violate Settlemire's confrontation rights, determining the analyst was "precisely the type of analyst the Court anticipated might be challenged based on its holding in *Melendez-Diaz*." *Id.*

Therefore, we hold Stephens's testimony, based on Boutang's breath test results and the breathalyzer maintenance records, and the admission of the breathalyzer results, did not violate Boutang's rights under the Confrontation Clause. *See Hamilton*, 300 S.W.3d at 22 (holding data produced by scientific instruments were not testimonial statements, as data were in essence "statements" by machine rather than operator of machine); *see Blaylock v. State*, 259 S.W.3d 202, 205–08 (Tex. App.—Texarkana 2008, pet. ref'd) (holding Confrontation Clause was not

violated by testimony of chemist that substance was cocaine when opinion based on data and notes of analysis performed by different chemist); *see also Wood v. State*, 299 S.W.3d 200, 212–23 (Tex. App.—Austin 2009, pet. ref'd) (holding Confrontation Clause was not violated by medical expert testimony based on testimonial hearsay); *Martinez v. State*, 311 S.W.3d 104, 112 (Tex. App.—Amarillo 2010, pet. ref'd) (same); *Henderson*, 14 S.W.3d at 412 (allowing one breath test technical supervisor to testify as expert in place of another under Rule 703).

*Breathalyzer Machine Maintenance Records*

This court must also determine whether the admission of the maintenance records, produced as State's Exhibits 11 and 12 violated Boutang's rights under the Confrontation Clause.

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Supreme Court held a certificate of drug analysis created for use in a criminal prosecution was testimonial in nature and could not be admitted into evidence absent the declarant who certified the result. *Id.* at 310–11. Despite this holding, the majority also suggested that routine maintenance records might not be testimonial. *See id.* at 311 n.1 ("Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records."). Consistent with its observation in footnote one, the majority reasoned the certificate of analysis was testimonial because it "prov[ed] one fact necessary for [Melendez-Diaz's] conviction—that the substance he possessed was cocaine." *Id.* at 313. Similarly, the majority distinguished the certificates of analysis from other cases where records were admitted for a purpose other than showing the defendant's guilt or innocence. *Id.* at 323 n.8 (citing *Dowdell v. United States*, 221 U.S. 325 (1911)); *see also Dowdell*, 221 U.S. at 330 ("Documentary evidence to establish collateral facts, admissible under the common law, may be admitted in evidence.").

Boutang argues the maintenance records were testimonial in nature, and their admission violated her Confrontation Clause rights, because their creator, McDougall, was not present at trial. Boutang further states Stephens's testimony regarding these records is testimonial because they were given for the purpose of convicting Boutang. In other words, Boutang argues the records' "primary purpose" (and Stephens's testimony about them) was to "establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

However, as we noted with the results of the breath test, the only statements from McDougall found in the maintenance records relate to the reference solution, specifically the line noting "reference predicted 0.080." As noted earlier, we do not find this statement is testimonial in nature or necessary to "establish or prove past events potentially relevant to later criminal prosecution." *See Davis*, 547 U.S. at 822. It is the Intoxilyzer machine itself that reads the concentration of the reference solution, despite the number predicted by the technical supervisor.

Stephens's testimony, as an expert of the machine's functioning and maintenance, established the maintenance records were "prepared in the regular course of equipment maintenance." *See Melendez-Diaz*, 557 U.S. at 311 n. l. Stephens testified the records were periodically created once or twice a month in a routine fashion. The monthly checks, including checking the reference solution, are performed to "make sure that the instrument's operating correctly." Thus, we hold the maintenance records fall under the category of "documents prepared in the regular course of equipment maintenance," which the *Melendez-Diaz* Court specifically stated qualified as nontestimonial records. *See id.* at 311 n.1.

We hold the records were correctly admitted as business records under the Texas Rules of Evidence, and did not violate Boutang's rights under the Confrontation Clause.[2]  Accordingly, we overrule Boutang's Confrontation Clause issues.

### *Venire Question*

Boutang next argues the trial court committed harmful error by allowing the State to ask the venire members if they would always consider the results of a breath test.

### *Standard of Review*

A trial court has broad discretion over voir dire and its rulings on whether or not a question is proper during voir dire.  *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).  We leave to the trial court's discretion the propriety of a particular question, and the trial court's discretion will not be disturbed on appeal absent an abuse of that discretion.  *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003).  When a potentially improper question is ambiguously worded, a trial court does not abuse its discretion by either prohibiting or permitting the question.  *Sanchez v. State*, 165 S.W.3d 707, 714 n.19 (Tex. Crim. App. 2005).

### *Application*

During voir dire, the prosecutor asked the venire:

Will you all agree to consider the results of a breath test if one is introduced [?] Is that something that you could consider [?] Is that something that might help you determine whether or not a person's alcohol concentration is above or below 0.08?

Boutang's trial counsel objected on the basis that the prosecutor was trying to improperly commit the venire.  The prosecutor argued the question was proper because a potential juror

---

[2] *See* TEX. R. EVID. 803(6); *Henderson v. State*, 14 S.W.3d 409, 412 (Tex. App.—Austin 2000, no pet.) (concluding that intoxilyzer maintenance records are admissible under Rule 803(6)); *Ponce v. State*, 828 S.W.2d 50, 51 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (concluding that intoxilyzer maintenance records are admissible as business records under Rule 803(6) because they reflect routine inspections and maintenance that occur outside of context of criminal investigation); *Grady v. State*, 962 S.W.2d 128 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (concluding that intoxilyzer maintenance records are admissible under Rule 803(6)).

would be challengeable for cause if he or she could not consider all the evidence. The objection was overruled and the prosecutor continued to ask the same question to each row of the venire.

An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991). However, an attorney may commit a prospective juror if the question gives rise to a valid challenge for cause. *Standefer v. State*, 59 S.W.3d 177, 182 (Tex. Crim. App. 2001). Thus, in determining whether the State made an improper commitment question, this court must determine: (1) if the question is a commitment question; and (2) whether the question includes only the facts necessary to establish a valid challenge for cause. *Id.* at 182–83.

An attorney may commit a prospective juror to considering the entire range of punishment for a particular offense. *Id.* at 181 (citing *Johnson v. State*, 982 S.W.2d 403, 405 (Tex. Crim. App. 1998)). An attorney may also inquire into whether or not a prospective juror can impartially judge the credibility of a witness. *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999).

In *Lydia v. State*, the Second Court of Appeals held a prosecutor's question asking potential jurors how they would evaluate a witness's testimony if they learned the witness had a criminal record was not a commitment question. 81 S.W.3d 486, 492 (Tex. App.—Fort Worth 2002, pet. granted), *ref'd*, 109 S.W.3d 495 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals reversed, holding the question required the prospective jurors to resolve an issue (witness credibility) based on a particular fact (a criminal record). *Lydia v. State*, 109 S.W.3d 495, 499 (Tex. Crim. App. 2003). The case was remanded back to the court of appeals to examine the second part of the *Standefer* inquiry. *Id.* at 500. On remand, the court found the question was a proper commitment question because it gave rise to a valid challenge for cause

under Article 35.16(a)(9) of the Texas Code of Criminal Procedure by committing the jurors to impartially judging a witness's credibility. *Lydia v. State*, 111 S.W.3d 902, 905–06 (Tex. App.—Fort Worth 2003, pet. ref'd); *see* TEX. CODE CRIM. PROC. art. 35.16(a)(9) (West 2006) (allowing either party to challenge prospective juror for bias or prejudice in favor of, or against, defendant).

Unlike the question in *Lydia*, the instant question did not ask the venire to resolve an issue based on a particular fact. The question in *Lydia*—"Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?"—presented the jurors with a particular fact ("some criminal history") and urged them towards a particular resolution (to not "automatically dismiss[] his testimony"), 109 S.W.3d at 496, 499–500. The instant question merely asked jurors if they could consider the results of a breath test.

The State admits the word "consider" may indicate an improper commitment question. *See Lydia*, 109 S.W.3d at 498. However, the instant question does not contain any hypothetical facts nor does it contain any additional qualifying terms. Furthermore, the question does not ask potential jurors to set a hypothetical parameter as to how they might resolve a particular issue. Accordingly, there is no conclusive evidence the trial court could have found that the question was a commitment question.

Even if we were to decide the question was a commitment question, we hold the question was ambiguously worded, and therefore, the trial court did not abuse its discretion in admitting it. As noted in *Sanchez v. State*, 165 S.W.3d 707, 714 n. 19 (Tex. Crim. App. 2005), sometimes it is difficult for appellate courts to determine whether a specific question is an improper commitment question because it is ambiguously phrased. Therefore, we hold the trial court did

not abuse its discretion in allowing the State to pose the question to the venire. *See id.* We overrule this issue.

### *Jury Instruction*

Article 38.23 of the Texas Code of Criminal Procedure provides that where a fact issue is raised with regard to whether evidence was obtained in violation of a constitutional provision or law, the jury shall be instructed that if it believes, or has a reasonable doubt, that evidence was obtained in violation of those provisions, then it must disregard that evidence. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). An Article 38.23 instruction is required to be included in the charge only if there is a factual dispute about how the evidence was obtained. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). When essential facts concerning the search or arrest are not in dispute, the legality of the search or arrest is a question of law, not fact, and no jury instruction is required. *Garza v. State*, 126 S.W.3d 79, 86 (Tex. Crim. App. 2004)

In her final issue on appeal, Boutang challenges whether Officer Esquivel had probable cause to arrest Boutang, and whether the trial court erred in failing to give an instruction on this.

A review of the record shows a jury instruction was not required in this case because most of the facts now raised by Boutang with regards to probable cause were undisputed at trial. *See Garza*, 126 S.W.3d at 86. For example, on appeal, Boutang argues Officer Esquivel: (1) only held the stimulus out two to three seconds, rather than four during the HGN; (2) only administered seven passes on the HGN; and (3) observed only five clues and two clues on the walk-and-turn and one-leg-stand tests, respectively. These facts were not affirmatively disputed, and therefore did not require a jury instruction on whether probable cause existed to arrest Boutang. *Id.*

Although Boutang raises some disputed facts, they are not material to the provision of a jury instruction on probable cause. For instance, Officer Esquivel initially mentioned Boutang was not wearing contacts at the time of arrest, and then changed his testimony. This disputed fact is not material because the HGN test only requires the officer make a notation that the subject is wearing contacts and does not prohibit him from administering the test on the subject. *See Quinney v. State*; 99 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (quoting 1995 NHTSA manual that officer make note whether or not suspect wears contacts before starting HGN test). Furthermore, even if the HGN test was not performed in exact accordance with the NHTSA guidelines, this does not render the test inadmissible. *See Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting slight variations in administration of HGN test do not render evidence inadmissible or unreliable, but may affect weight to be given testimony).

If the trial court found that remaining, undisputed facts still created probable cause to arrest Boutang, then the disputed facts are not material to her arrest. *See Garza*, 126 S.W.3d at 86 (Tex. Crim. App. 2004) ("That appellant disagrees with the conclusion that probable cause was shown as a matter of law is not the same as appellant controverting the facts.") (internal quotes and cite omitted). Accordingly, we hold the trial court did not err in denying Boutang's request for an Article 38.23 jury instruction, and we overrule Boutang's last issue.

### CONCLUSION

Based on the foregoing, we hold the admission of Stephens's testimony, the breath test results, and the breathalyzer maintenance records did not violate Boutang's rights under the Confrontation Clause. We also hold the trial court did not err in allowing the State to ask the venire whether it could consider the results of a breath test. Finally, the trial court did not err in

refusing to instruct the jury to consider whether the arresting officer had probable cause to arrest Boutang.  Accordingly, we affirm the judgment of the trial court.

Marialyn Barnard, Justice

Publish