

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00284-CR

JOHN HERNANDEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2014-1924-A

----------

### MEMORANDUM OPINION[1]

----------

Appellant John Hernandez appeals his conviction of driving while intoxicated (DWI), enhanced by two prior convictions of DWI. *See* Tex. Penal Code Ann. §§ 49.04, 49.09 (West Supp. 2015). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BRIEF FACTS

On July 18, 2014, Appellant was stopped by Officer Ryan Stanford of the Denton Police Department for driving the wrong way down the roadway. Appellant was unsteady, had slurred speech and red and watery eyes, smelled of alcohol, admitted to drinking at a bar, and could not recite the alphabet or count. He admitted that he may have been on the wrong side of the roadway because he had been drinking. Officer Stanford administered the horizontal gaze nystagmus test (HGN) on Appellant and observed all six clues, indicating intoxication. Officer Stanford next directed Appellant to perform a walk-and-turn test during which he observed seven of eight clues, also indicating intoxication. Finally, Officer Stanford had Appellant perform the one-leg-stand test and observed three of four clues, indicating intoxication.

Officer Stanford provided Appellant with the DIC-24 warnings[2] and asked him to consent to the taking of a breath sample. Appellant agreed to give a breath sample, and the results were 0.123 and 0.124.[3] Because Appellant had

---

[2]The DIC-24 is the Texas Department of Public Safety's standard form containing the written warnings required by the transportation code to be read to an individual arrested for DWI before a peace officer requests a voluntary blood or breath sample from a person. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2015); *State v. Neesley*, 239 S.W.3d 780, 782 n.1 (Tex. Crim. App. 2007).

[3]The legal limit is 0.08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

two intoxication offense convictions prior to July 18, 2014, he was charged with felony DWI.

At trial, Officer Stanford testified regarding Appellant's behavior, the arrest, and the operation of the breath test. The State also offered the testimony of Terry Robinson, the technical supervisor of the breath-test machine—the Intoxilyzer—at the time of trial, but not the technical supervisor in charge of maintenance and testing of the Intoxilyzer at issue at the time that Appellant took his breath test.[4] Robinson testified to his experience as a technical supervisor, how the Intoxilyzer works, and the maintenance of the Intoxilyzer, and he also interpreted the results of Appellant's breath test.

The jury found Appellant guilty of felony DWI and sentenced him to eighty years' confinement. *See* Tex. Penal Code Ann. §§ 49.04, 49.09.

## II. DISCUSSION

### A. Evidence of prior convictions

We address Appellant's first and fifth issue together because both relate to evidence of Appellant's prior convictions. In his first issue, Appellant complains of the denial of his motion for directed verdict on the ground that one of his prior convictions was void as a matter of law and, therefore, could not support an indictment or conviction for felony DWI. In his fifth issue, Appellant argues that

---

[4]Lori Fuller was the technical supervisor who was in charge of maintenance and testing of the Intoxilyzer at the time the test was taken by Appellant. She did not testify at trial.

3

the trial court abused its discretion by admitting the complaint and information from his prior conviction for "driving/boating while intoxicated." We address Appellant's fifth issue first.

### i. Admission of the complaint and information

Absent a stipulation by Appellant as to his prior convictions for DWI, the State was required to prove them during the guilt-innocence stage of trial. *See Barfield v. State*, 63 S.W.3d 446, 448 (Tex. Crim. App. 2001). The State sought to accomplish this by offering into evidence both prior judgments.[5] One of the State's exhibits—Exhibit 3—was a Judgment of Community Supervision dated September 17, 2013, reflecting a conviction for "driving/boating while intoxicated." For clarification purposes, the State also offered State's Exhibit 8, the complaint and information related to the "driving/boating while intoxicated" conviction, indicating that Appellant was charged with driving while intoxicated, not boating while intoxicated.

Appellant argues that the trial court's admission of the complaint and information was error because a complaint and information are not evidence of guilt and, therefore, are irrelevant. We review a trial court's decision to admit evidence under an abuse of discretion standard. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). We may reverse the trial court's decision only if the ruling is outside

[5]Appellant does not contest that he was the subject of each of these prior convictions.

4

the zone of reasonable disagreement. *Ford v. State*, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996). We disagree with Appellant's contention that the complaint and information were irrelevant. During testimony at trial, Appellant questioned the validity of the judgment[6] because it recited a conviction for both driving while intoxicated and boating while intoxicated.[7] Thus, the complaint and information were not admitted as proof of Appellant's guilt—the judgment itself was evidence of his guilt—but to clarify what crime he was charged with and adjudicated guilty of. *See* Tex. R. Evid. 401. We therefore overrule Appellant's fifth issue.

## ii. Denial of Appellant's motion for instructed verdict

Appellant argues in his first issue that the trial court erred in denying his motion for instructed verdict because his prior conviction for "driving/boating

---

[6]Appellant asked Christie Perry, an investigator with the district attorney's office, the following:

> Q: So it's impossible from reading this judgment [for driving/boating while intoxicated] for you to say with any certainty what offense he was convicted of, isn't it?

> A: Correct.

Appellant additionally questioned Officer Stanford regarding the difference between driving while intoxicated and boating while intoxicated.

[7]Appellant did not appeal this conviction, but he did bring it to our attention in his appeal of the trial court's denial of his application for a writ of habeas corpus relating to that conviction. *Ex parte Hernandez*, No. 02-15-00277-CR, 2016 WL 354136 (Tex. App.—Fort Worth Jan. 28, 2016, no pet. h.) (mem. op., not designated for publication). As we discuss below, in affirming the trial court's decision, we held that the record supported the trial court's determination that the inclusion of the term "boating" was a clerical error. *Id.* at *3.

5

while intoxicated" was void as a matter of law and, therefore, could not support an indictment or conviction for felony DWI.

A challenge to the denial of a motion for instructed verdict is actually a challenge to the sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457

6

S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

A person may be charged with felony DWI if he has two previous convictions for DWI. Tex. Penal Code Ann. § 49.09(b)(2). The two prior DWI offenses are necessary elements of the offense of felony DWI; they are jurisdictional, as opposed to mere enhancement allegations. *See Martin v. State*, 200 S.W.3d 635, 640 (Tex. Crim. App. 2006); *State v. Wheeler*, 790 S.W.2d 415, 416 (Tex. App.—Amarillo 1990, no pet.). Therefore, to obtain a conviction for felony DWI, the State must prove the two prior DWI convictions at the guilt-innocence stage of trial. *See Barfield*, 63 S.W.3d at 448; *Mapes v. State*, 187 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Appellant first contends that his second conviction for an intoxication offense is void as a matter of law because the judgment states that it is for "driving/boating while intoxicated." We have previously addressed this issue in Appellant's appeal of the trial court's denial of habeas corpus relating to that second conviction. *See Hernandez*, 2016 WL 354136 at *2–3. In that case, the trial court issued findings, including a finding that "[t]he term 'boating' on [Appellant's] judgment was a clerical error." *Id.* at *2. We held that the record supported the trial court's finding and that such a clerical error did not render the

7

judgment void.[8]  *Id.* at *3.  Accordingly, we do not agree with Appellant that he was entitled to an instructed verdict on the ground that the prior judgment was void as a matter of law.

To prove the prior convictions, the State offered into evidence both State's Exhibit 2 and State's Exhibit 3.  State's Exhibit 2 is a Judgment of Conviction of Sentence dated November 6, 2006, reflecting a conviction for DWI.  As previously discussed, State's Exhibit 3 is a Judgment of Community Supervision dated September 17, 2013, reflecting a conviction for "driving/boating while intoxicated."  Also as previously discussed, the State additionally offered State's Exhibit 8, the complaint and information related to the "driving/boating while intoxicated" conviction, to clarify that Appellant was charged with driving while intoxicated.

It was in the province of the jury to weigh the evidence and to draw reasonable inferences therefrom.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.  The jury was presented evidence of two prior convictions and evidence that the charge underlying the conviction reflected in State's Exhibit 3 was DWI, even if the resulting judgment erroneously included a conviction for "boating while intoxicated."  Viewing this evidence in the light most

---

[8]In our opinion affirming the trial court's denial of Appellant's application for writ of habeas corpus, we noted that the trial court had authority to correct the clerical error but had not done so at that time.  *Hernandez*, 2016 WL 354136 at *3, n.7.  We do not know if the trial court has since issued a nunc pro tunc order but note again that it would be within the trial court's power to do so.  *See State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994).

8

favorable to the verdict, the jury could reasonably conclude that Appellant had been charged with and convicted of DWI twice prior to the DWI charge resulting from the events of July 18, 2014.[9]  We therefore overrule Appellant's first issue.

## B.  Testimony of technical supervisor Terry Robinson

In his second issue, Appellant argues that because evidence of the maintenance of the Intoxilyzer machine is testimonial in nature, he was denied a fair trial through denial of the opportunity to cross-examine the technical supervisor who had actually performed the monthly service of the Intoxilyzer machine before and after Appellant's breath test.  In his third issue, Appellant argues that we should overrule our prior holding in *Settlemire v. State*, which held directly to the contrary.  323 S.W.3d 520 (Tex. App.—Fort Worth 2010, pet. ref'd).  Because these issues are related, we will address them together.

### i.  Predicate for admission of breath-test results

In order to properly lay the predicate for admission of breath-test results, the State must establish (1) that the machine functioned properly on the day of the test as evidenced by a reference sample having been run through it; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory behind it; and (3) proof of the test results by a

---

[9]At oral argument, Appellant suggested that the State should have called the trial judge who presided over the case resulting in the conviction for "driving/boating while intoxicated."  We decline to impose such a burden on the State, especially considering that a trial judge in such a situation would presumably rely upon the very documents from the prior case that were admitted into evidence—the complaint, information, and judgment.

witness or witnesses qualified to translate and interpret such results. *Harrell v. State*, 725 S.W.2d 208, 209–10 (Tex. Crim. App. 1986); *Rhyne v. State*, 387 S.W.3d 896, 902 (Tex. App.—Fort Worth 2012, no pet.).

This predicate is generally met by the testimony of both the test operator—the person who administered the breath test in question—and the technical supervisor—the person who was responsible for ensuring that the test equipment was properly maintained and functioned properly. *See Rhyne*, 387 S.W.3d at 902–03 (holding breath-test results were inadmissible because the State had only offered the testimony of the test operator and had not shown proper maintenance of the Intoxilyzer), 37 Tex. Admin. Code § 19.4 (2015) (Tex. Dep't of Pub. Safety, Operator Certification); *see also French v. State*, 484 S.W.2d 716, 719 (Tex. Crim. App. 1972) ("[A]n officer may administer a breath test even though he is not otherwise qualified to interpret the results, and the standards required to qualify one to administer the test are far less than those qualifying to interpret the results."). We noted the typical manner in which breath-test evidence is presented at trial in *Rhyne*:

> First, the officer who administers the test testifies that he is certified as an [I]ntoxilyzer operator, that he administered the test to the defendant and did so in accordance with the Department's regulations, and that the results are contained in a data readout that the State offers as an exhibit. As part of this testimony, the operator testifies that he ran a reference test on the Intoxilyzer and what results were produced by this reference test.

Second, an officer who was the technical supervisor with supervisory responsibility for the machine used in the test testifies that he is certified by the Department as a technical supervisor, the machine used was certified by the Department for testing purposes, the machine used was checked periodically to assure that it operated properly, and that the reference sample used by the officer administering the test was properly prepared. This witness generally asserts that he understands the scientific theory of the device and interprets the numbers on the data readout. He may also explain the reference test and what is meant by the results of this process.

*Rhyne*, 387 S.W.3d at 903 (quoting 40 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice & Procedure* § 14:84 (3d ed. 2011)).

In this case, the State used the testimony of Officer Stanford, the administrator of the breath test, and Terry Robinson, a technical supervisor of the Intoxilyzer used to conduct the test, to lay the predicate for admission of the breath-test results. Officer Stanford first testified to the administration of the breath test generally and then specifically described some of the safeguards the Intoxilyzer has in place to ensure it is operating correctly, including a temperature readout of the reference sample to make sure it is kept at the correct temperature. He also explained how the Intoxilyzer reports the accuracy of its own calibration by providing a predictive value and an actual test reference value on the breath-test result printout. Officer Stanford testified that, in his opinion, the Intoxilyzer was operating correctly at the time he administered the breath test to Appellant.

Robinson testified to his experience as a Breath Alcohol Supervisor and Toxicology Scientist, including his knowledge of how the Intoxilyzer works, and to the maintenance of the Intoxilyzer in question. Robinson outlined the regular maintenance performed on the machine, including an explanation about diagnostic checks conducted monthly during on-site inspections of the instrument.[10] He also described a second check that uses a software program to enable daily diagnostic tests on the Intoxilyzer machine to be performed and the machine's data to be retrieved remotely.[11]

Although Fuller had conducted the on-site inspections of the Intoxilyzer before and after Appellant's breath test, Robinson also participated. He testified that he, Fuller, and a third technical supervisor had prepared the reference

---

[10]In particular, Robinson testified:

At least once each calendar month, we're required to go to the testing site, and when we do so, we do a diagnostic check of the instrument and its associated equipment.

We change the standard or reference analysis solution that is used with the instrument and with each analysis. We do an overall inspection of the site itself, and we make sure that the supplies that the operators need to run the tests are in good number.

[11]Robinson testified, "Beginning each weekday morning, each one of our instruments is contacted, and when it is contacted, three things happen: We perform a diagnostic check, we perform a calibration check, and we download any data or any tests that have been run in the past twenty-four hours."

solution—by diluting ethyl alcohol to a known concentration—which was used to test the Intoxilyzer.[12]

Robinson testified that prior to Appellant's breath test on July 19, 2014, Fuller conducted an on-site inspection of the Intoxilyzer used in this case, that this inspection occurred on June 27, 2014, and that Fuller conducted a second on-site inspection on July 24, 2014, five days after Appellant's breath test. He testified that based upon the maintenance records resulting from those inspections—records that were made during the regular course of business—the Intoxilyzer was in operational condition when Officer Stanford conducted the breath test on Appellant.[13]

### ii. Confrontation Clause

Appellant argues that his right to confrontation was violated when Robinson was permitted to testify in lieu of Fuller.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI. The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an

---

[12]After the reference solution is poured into the machine, the Intoxilyzer tests the reference solution and gives a "predictive value" as part of the printout of the breath-test results. If the predictive value is outside the tolerated range, the Intoxilyzer itself terminates the test.

[13]The maintenance records were not offered or admitted into evidence.

13

adversarial proceeding before the trier of fact. *Lilly v. Virginia*, 527 U.S. 116, 123–24, 119 S. Ct. 1887, 1894 (1999). On this matter, the Supreme Court has been clear: "Where testimonial evidence is at issue . . . , the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). Thus, unless the prosecution can show that a declarant is unavailable to testify in court and that the accused had an opportunity to cross-examine him, out-of-court statements offered against the defendant that are testimonial in nature are objectionable. *Id.*; *Langham v. State*, 305 S.W.3d 568, 575–76 (Tex. Crim. App. 2010).

Whether an out-of-court statement is testimonial is an issue of law. *Langham*, 305 S.W.3d at 576 (citing *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)). We review de novo the trial court's determination that an out-of-court statement is or is not testimonial in nature, looking to whether "the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*; *see also Wall v. State*, 184 S.W.3d 730, 734–35 (Tex. Crim. App. 2006).

We have previously addressed the very facts at issue in this appeal in *Settlemire v. State*. In *Settlemire*, the trial court admitted into evidence the breath test results and the maintenance logs for the Intoxilyzer machine when they were sponsored by the technical supervisor who was in charge of the

14

machine at the time of trial but who had not been the supervisor at the time the defendant was arrested.[14] 323 S.W.3d at 521. The defendant argued that the admission of those records violated his right to confront the witnesses against him, specifically the technical supervisor who was in charge of the machine at the time the defendant took the breath test. *Id.* Relying upon the Supreme Court's footnote in *Melendez-Diaz v. Massachusetts*,[15] we held that the admission of the breath test results and the maintenance logs did not violate the defendant's rights to confrontation. *Id.* at 522 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 2532 n.1 (2009)). We explained in *Settlemire* that the technical supervisor who testified was "precisely the type of analyst that the [Supreme] Court anticipated might be challenged based on its holding in *Melendez-Diaz*" and that the Supreme Court had "made clear . . . that it did not intend its holding to 'sweep away an accepted rule governing the admission of scientific evidence.'" *Id.* (quoting *Melendez-Diaz*, 557 U.S. at 312, 129 S. Ct. at

---

[14]Incidentally, in *Settlemire*, the sponsoring witness complained of was Fuller—she was in charge of the machine at the time of trial but had not been the supervisor at the time the defendant was arrested. 323 S.W.3d at 521. Here, Appellant objects that Fuller was *not* the sponsoring witness, as she was the technical supervisor in charge of the Intoxilyzer used at the time of Appellant's arrest.

[15]Specifically, *Melendez-Diaz* noted that it was not holding that the right to confrontation extended to every individual that "may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device" and that "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." 557 U.S. at 311 n.1, 129 S. Ct. at 2532 n.1.

15

2533). Our holding in *Settlemire* has been adopted or favorably discussed by a number of our sister courts. *See Trigo v. State*, No. 01-15-00382-CR, 2016 WL 430879, at *7 (Tex. App.—Houston [1st Dist.] Feb. 4, 2016, pet. filed); *Hysenaj v. State*, No. 11-13-00219-CR, 2015 WL 4733068, at *2–3 (Tex. App.—Eastland Aug. 6, 2015, no pet.) (mem. op., not designated for publication); *Boutang v. State*, 402 S.W.3d 782, 788–89 (Tex. App.—San Antonio 2013, pet. ref'd), *cert. denied*, 134 S. Ct. 2290 (2014); *Weber v. State*, No. 14-11-00863-CR, 2012 WL 3776362, at *5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, no pet.) (mem. op., not designated for publication); *Torres v. State*, No. 08-09-00266-CR, 2011 WL 3199065, at *2 (Tex. App.—El Paso July 27, 2011, no pet.) (not designated for publication).

Appellant argues that the holding in *Settlemire* is incorrect because the breath-test results and any maintenance records are testimonial in nature in light of the technical supervisor's role as defined by the administrative code:

> The primary function of the technical supervisor is to provide the technical, administrative and supervisory expertise in safeguarding the scientific integrity of the breath alcohol testing program and to ensure the breath alcohol testing program's acceptability **for evidential purposes.**

37 Tex. Admin. Code § 19.5(a) (2015) (Tex. Dep't of Pub. Safety, Technical Supervisor Certification) (emphasis added).[16] Appellant specifically focuses on

---

[16]The sections of the administrative code relating to the administration of breath tests were amended in 2015, prior to Appellant's trial, but no substantive changes were made that relate to Appellant's argument in this case. *See* 37 Tex. Admin. Code §§ 19.5, 19.6 (2013) (Tex. Dep't of Pub. Safety, Operator

16

the rule's language that the technical supervisor's role is to assure the breath-test program's "acceptability for evidential purposes," arguing that this proves that breath-test results and maintenance records for an Intoxilyzer are testimonial under the Supreme Court's direction that we are to look at whether the "primary purpose" of a document or testimony "is to establish or prove past events potentially relevant to later criminal prosecution." *Langham*, 305 S.W.3d at 576*; see Wall*, 184 S.W.3d at 734–35.

Appellant argues that the administrative code and the *Rhyne* decision support the conclusion that the maintenance records of an Intoxilyzer machine are testimonial in nature because the records are made for the specific purpose of proving a fact at trial. *Rhyne*, 387 S.W.3d at 903 (holding that breath-test results were inadmissible without testimony showing the Intoxilyzer in question was properly maintained); *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006) (holding that statements are testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"). He further relies upon the Supreme Court's decision in *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705 (2011). *Bullcoming* concerned a prosecution for DWI in which a forensic laboratory report analyzing the defendant's blood alcohol content was admitted at trial and sponsored by a forensic scientist who was not the scientist who had

Certification, Technical Supervisor Certification), *repealed by* 40 Tex. Reg. 250, 255 (2015).

conducted the testing and certified the results. *Id.* at 653–57, 131 S. Ct. at 2711–12. The Court held that the forensic testimony of the second scientist violated the defendant's rights under the Confrontation Clause because the report did more than report a machine-generated number: in it, the original scientist certified that he received the blood sample intact, that he checked the forensic report number and the sample number and they "correspond[ed]," that he performed a particular test on the sample, adhering to a precise protocol, and that "no circumstance or condition . . . affect[ed] the integrity of the sample or . . . the validity of the analysis." *Id.* at 660, 131 S. Ct. at 2714. Therefore, the report was testimonial in nature, and the author of the report had to be available for cross-examination. *Id.*, 131 S. Ct. at 2714.

In *Boutang v. State*, the San Antonio court encountered a situation similar to the facts here. In *Boutang*, the technical supervisor who had been responsible for maintaining the Intoxilyzer machine at the time the defendant was tested was not available to testify at trial because he had retired. 402 S.W.3d at 785–86. Instead, the new technical supervisor testified about the maintenance of the Intoxilyzer based upon the maintenance records for the machine that were kept in accordance with Department of Public Safety regulations. *Id.* The appellant argued that her rights under the Confrontation Clause were violated by overruling her objection to the second technical supervisor's testimony, the admission of the breath tests, and the admission of the Intoxilyzer maintenance reports. *Id.* at 786. The appellate court held that her rights to confrontation were not violated

and distinguished the facts from those in *Bullcoming*. *Id.* at 787–88. First, it noted that the report at issue in *Bullcoming* was more than just a signed printout from a machine but was instead a written report containing the analyst's own certifications and conclusions. *Id.* at 787. Indeed, Justice Sotomayor, in her concurring opinion, noted that *Bullcoming* does not address a situation "in which the State introduced only machine-generated results, such as a printout from a gas chromatograph." *Bullcoming*, 564 U.S. at 673, 131 S. Ct. at 2722 (Sotomayor, J., concurring). The court in *Boutang* then noted that the only statement by the previous technical supervisor in the maintenance records was a notation of the predicted reading from the Intoxilyzer based upon the reference solution used to test and calibrate the machine. *Boutang*, 402 S.W.3d at 788. The court went on to state that "it is the Intoxilyzer machine itself, not an individual, which reads the concentration of the reference solution, despite the number predicted by the technical supervisor." *Id.*

Finally, the court in *Boutang* noted that neither the court of criminal appeals nor any other appellate court in Texas has "required the State to produce the actual person who mixed a reference solution for an Intoxilyzer machine before the breath-test results can be admitted in court." *Id.* "Thus, as an expert familiar with the maintenance of Intoxilyzer machines and lab procedures associated with its maintenance, [the new technical supervisor] testified as to the maintenance of the machine and what the particular numbers meant on the report." *Id.*

19

Appellant argues that he has no reassurance of Fuller's accuracy or truthfulness in keeping the maintenance records for the Intoxilyzer.[17] A similar complaint was addressed in *Paredes v. State*, 462 S.W.3d 510 (Tex. Crim. App. 2015). In *Paredes*, the State offered the testimony of a forensic-laboratory director to testify about the DNA analysis of a blood sample from the defendant. *Id.* at 512. The director testified that the DNA testing was conducted in an assembly-line batch process by other lab analysts and that she analyzed the raw data to determine whether there was a DNA match. *Id.* The court of criminal appeals held that the defendant's Confrontation Clause rights were not violated by the fact that the lab analysts did not testify, and it emphasized that the State did not introduce into evidence the raw data, which was computer-generated. *Id.* at 518–19. The court noted:

---

[17]Related to this point, Appellant filed a supplemental brief in this court asserting that, after both parties had submitted their briefs in this appeal, the State provided to Appellant certain material regarding Fuller that had not been previously disclosed to Appellant. Appellant argues that we must consider this evidence as *Brady* material that is relevant to the issue of Fuller's absence from trial. *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). However, "[a]n appellate court may not consider factual assertions that are outside the record . . . . While the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence." *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *see also Newman v. State*, 331 S.W.3d 447, 450 n.7 (Tex. Crim. App. 2011). Generally, our review of the record is limited to the evidence before the trial court at the time of the trial court's ruling. *Whitehead*, 130 S.W.3d at 872. Appellant has not provided us, nor have we found, any authority providing that we can consider such evidence that is not part of the record. We therefore decline to do so.

> Appellant contends that the analysts could misreport information or mishandle the samples, but the Supreme Court has held that the Confrontation Clause does not mandate 'that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device' must testify. *Melendez-Diaz*, 557 U.S. at 311 n. 1, 129 S. Ct. [at 2532 n.1]. More importantly, Freeman testified about the safety measures in place at [the forensic laboratory] to detect such errors and stated that, if part of the analysis were done improperly, the laboratory procedure would not generate an incorrect DNA profile. The testing would yield no result at all rather than an improper result.

*Id.* at 518.

In this case, unlike in *Boutang*, Robinson was actually involved in the maintenance process because he, Fuller, and another technical supervisor worked together in preparing the reference solution used to test the Intoxilyzer in question. And, as was also noted in the *Paredes* decision, Robinson testified that, if a reference solution were incorrectly prepared or part of the maintenance check process was performed improperly and as a result the predictive value was outside the tolerated range, the Intoxilyzer would terminate the test and yield no result at all rather than an improper result. The results of the Intoxilyzer maintenance and breath tests are computer-generated, and it was the Intoxilyzer machine itself, not Fuller, which read the concentration of the reference solution. *See, e.g.*, *Boutang*, 402 S.W.3d at 782.[18] The raw data in this case was

---

[18]Appellant urges us to follow the reasoning of the dissenting opinion rather than the majority opinion in *Boutang*. The dissent in that case argued that the original technical supervisor was personally involved in the maintenance and operation of the machine and, therefore, was essential to showing that the Intoxilyzer in that case was operating properly at the time the breath test took place. 402 S.W.3d at 795–96 (Martinez, J., dissenting). We note that no other

produced by the Intoxilyzer, a computer, and is therefore "not the functional equivalent of live, in-court testimony because [it] did not come from a witness capable of being cross-examined." *Paredes*, 462 S.W.3d at 519.

We decline Appellant's invitation to overrule *Settlemire* because it remains true that the testimony at issue here is just the sort of testimony addressed by the Supreme Court when it noted that the Confrontation Clause does not mandate "that anyone whose testimony may be relevant in establishing the . . . accuracy of the testing device" must testify. *Melendez-Diaz*, 557 U.S. at 311 n.1, 129 S. Ct. at 2532 n.1. We hold that Appellant's Confrontation Clause rights were not violated by allowing Robinson to testify and by admitting the breath-test results. We therefore overrule Appellant's second and third issues.

## C. Admission of breath-test results

In his fourth issue, Appellant argues that the trial court abused its discretion by admitting the breath-test results because the State failed to prove "(1) [that] the reference sample [was] properly mixed and utilized in the Intoxil[y]zer; (2) that the machine at issue was periodically supervised and operated by one who understands the scientific theory of the machine; and, (3) that . . . there was a qualified witness who could translate and interpret the result of the test."

Texas court that has considered this issue has adopted the reasoning of this dissenting opinion.

We review the trial court's decision to admit scientific evidence for an abuse of discretion. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). Under this standard, we do not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement. *Id.* As we have previously noted in addressing Appellant's second and third issues, the State must establish (1) that the machine functioned properly on the day of the test as evidenced by a reference sample having been run through it, (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory behind it, and (3) proof of the test results by a witness or witnesses qualified to translate and interpret such results. *Harrell*, 725 S.W.2d at 209–10; *Rhyne*, 387 S.W.3d at 902.

In disposing of Appellant's second and third issues, we have determined that the State established the existence of periodic supervision over the machine through Robinson's testimony and that Robinson was qualified to translate and interpret the breath-test results. Robinson testified to his qualifications and experience as a technical supervisor. Robinson testified that the Intoxilyzer was functioning properly on the day of the test as evidenced by the reference sample run through it and reported on the breath-test result printout and the maintenance records for the machine.[19] He also testified to the supervision and maintenance

_____

[19]As we mentioned above, Robinson testified that the Intoxilyzer would have terminated the breath test and yielded no result at all if the reference solution had been incorrectly prepared. That did not occur in this case, as evidenced by the breath-test results that were obtained.

of the machine, including his involvement in making the reference sample used in the Intoxilyzer. He testified to the scientific theory behind the machine. And he testified to his experience and training as a technical supervisor, showing that he was qualified to translate and interpret the breath-test results.

Officer Stanford testified to his certification to run an Intoxilyzer machine and to the administration of the breath test. He testified to some of the safeguards in place within the Intoxilyzer, including the predictive value and actual test reference value that is included on the printout at the end of a breath test. And, according to Officer Stanford, the Intoxilyzer was operating correctly at the time he conducted the breath test of Appellant.

The testimony of Robinson and Officer Stanford was sufficient to establish the proper predicate for admission of the breath-test results. *See Rhyne*, 387 S.W.3d at 902. Contrary to Appellant's arguments, their testimony established that the Intoxilyzer was properly maintained and was operating properly at the time of Appellant's breath test. *Id.* And Robinson's testimony established that he was qualified to translate and interpret the results. The trial court did not abuse its discretion in admitting the breath-test results, and as such we overrule Appellant's fourth issue.

## Conclusion

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 16, 2016