

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00570-CR

Rueben Justin **TREJO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CR-9333
Honorable Michael E. Mery, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: December 6, 2023

AFFIRMED

A jury convicted Appellant Ruben Justin Trejo of criminally negligent homicide and assault after he caused a fatal collision with another driver. It sentenced him to two years' jail. In three issues, Trejo complains that the trial court erred in overruling his objections to the admission of (1) a certified copy of his driving record during the punishment phase of trial, (2) expert testimony about data retrieved from his vehicle's data recorder, and (3) expert testimony that failed to satisfy his Sixth Amendment right to confront adverse witnesses. We affirm.

BACKGROUND

Appellant Trejo caused a highspeed head-on collision by driving through an intersection against a red light. The crash occurred at night, and, though Trejo's car was equipped with daytime running lights, his headlights were off. His blood-alcohol level was .04. He killed the driver of the car he struck and was charged with manslaughter and aggravated assault.

At trial, the State used data from Trejo's car's airbag control module in conjunction with road evidence at the scene to establish his speed at the time of the crash. State's expert witness Sergeant Windsor testified that he was trained in retrieving the module's data through a software interface to read the results of the car's sensor inputs. Trejo objected to the admission of Sergeant Windsor's testimony as inadequate under the Sixth Amendment, but the trial court overruled the objection. Sergeant Windsor testified that Trejo was driving approximately seventy miles per hour in a forty-five mile-per-hour zone upon impact. The jury convicted Trejo of criminally negligent homicide and simple assault.

At sentencing the State introduced Trejo's driving record, which showed that he had received three previous speeding citations. Trejo objected to the admission of the driving record because it was not accompanied by certified judgments of guilt for the citations. But the State argued that Trejo's driving record was admissible as evidence of bad acts and character. The trial court overruled Trejo's objection. The jury sentenced Trejo to two years' state jail and one year in the county jail. Trejo appealed.

ADMISSIBILITY OF DEFENDANT'S DRIVING RECORD DURING THE PUNISHMENT PHASE

A.    Parties' Arguments

In Trejo's first issue, he argues that the trial court should not have admitted his driving record during his punishment-phase trial because it was insufficient to prove his speeding convictions beyond a reasonable doubt. The State argues that it was not required to "re-prove"

Trejo's past speeding convictions. It argues that the law only requires the State to prove that the driving record admitted during the punishment phase trial belonged to Trejo and that it did.

## B.      Standard of Review

"A trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of trial." *Schultze v. State*, 177 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). "We will not disturb a trial court's determination regarding the admissibility of relevant evidence unless an abuse of discretion has been shown." *Id*. (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)).

## C.      Law

At a punishment-phase trial, "evidence may be offered by the state…as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, … his character, … and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." TEX. CODE CRIM. PROC. ANN. art. 37.07; *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

The process of proffering evidence to prove an extraneous offense, even when not explicit, is referred to as a threshold inquiry. *See Flores v. State*, 440 S.W.3d 180, 199–200 (Tex. App.—Houston [14th Dist.] 2013), *judgment vacated on other grounds*, 427 S.W.3d 399 (Tex. Crim. App. 2014) (citing *Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd)). This threshold standard requires the State to be able to prove the commission of bad acts and extraneous crimes beyond a reasonable doubt and proffer its evidence before the trial court

may admit it for the jury's consideration. *See id.* (citing *Arzaga v. State*, 86 S.W.3d 767, 781–82 (Tex. App.—El Paso 2002, no pet.).

When the State offers a certified judgment, it satisfies the requirement of proving that the extraneous crime was committed. *See Cain v. State*, 468 S.W.2d 856, 858 (Tex. Crim. App. 1971), *overruled on other grounds by Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984); *Gentile v. State*, 848 S.W.2d 359, 360 (Tex. App.—Austin 1993, no pet.). Without a certified judgment, "[t]he trial court may not admit extraneous offense evidence unless the evidence is such that a jury could rationally find the defendant criminally responsible for the extraneous offense [beyond a reasonable doubt]." *Flores*, 440 S.W.3d at197 (quoting *Palomo v. State*, 352 S.W.3d 87, 92 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *accord Davis v. State*, 315 S.W.3d 908, 914 (Tex. App.—Houston [14th Dist.] 2010), *rev'd on other grounds*, 349 S.W.3d 517 (Tex. Crim. App. 2011). "Whether an extraneous offense was established beyond a reasonable doubt, however, is a question of fact for the jury rather than a preliminary question of admissibility for the trial court." *Davis*, 315 S.W.3d at 914 (citing *Mitchell v. State*, 931 S.W.2d 950, 955 (Tex. Crim. App. 1996) (plurality opinion)).

With specific regard to the admissibility of a driving record to show evidence of past bad acts, the State must proffer more than the driving record alone. *See Gentile*, 848 S.W.2d at 360; *accord Tex. Dep't of Pub. Safety v. Gentry*, 386 S.W.2d 758, 760 (Tex. 1965). This is not because the State must prove a conviction of an act listed in the driving record, but rather because the evidentiary value of the driving record is limited. *See Gentile*, 848 S.W.2d at 360. Therefore, for acts listed in a defendant's driving record to be admissible in the State's case at punishment, the State must be able establish their full relevance to the defendant and his punishment, i.e., that the subject matter is relevant to the jury's assessment, that the act or offense is linked to the defendant, **and that the offense transpired**, to the degree that "a jury could rationally find the defendant

criminally responsible." *See Palomo*, 352 S.W.3d 87, 91–92 (citing *Davis*, 315 S.W.3d at 914); *accord Smith v. State*, 227 S.W.3d 753, 760 (Tex. Crim. App. 2007). Alone, the driving record is only conditionally relevant, depending on what the State can (and does) present. *See Huddleston v. United States*, 485 U.S. 681, 690 n.7 (1988) (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure § 5054, pp. 269–270 (1977)); *Gentile*, 848 S.W.2d at 360.

If the State does not proffer or present more than the driving record alone to prove a bad act or extraneous offense, it is incumbent upon the defendant to object. *See* TEX. R. APP. P. 33.1; *Palomo*, 352 S.W.3d at 92; *Flores*, 440 S.W.3d at 197 (citing *Mitchell*, 931 S.W.2d at 953–54; *Davis*, 315 S.W.3d at 914). "It is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition." *Huddleston*, 485 U.S. at 690 n.7. In the absence of a trial objection that comports with a defendant's argument on appeal, the issue on appeal is waived. *See* TEX. R. APP. P. 33.1; *Palomo*, 352 S.W.3d at 92 (citing *Guevara v. State*, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003)).

## D. Analysis

Here, Trejo objected at his punishment-phase trial to the admission of his driving record because it was insufficient to prove his prior convictions for speeding. *See Gentile*, 848 S.W.2d at 360. He stated:

> Your Honor, they do not have any judgments, certified copies of judgments, any type of judgment evidence. All they have is a copy of the driving record. And that case[1] states that that is insufficient to present testimony of convictions.
>
> If there was an incomplete judgment, like if it was missing a thumbprint, if it was missing identifiers that were legally sufficient by itself, you could couple the two documents together to prove the sufficiency of that, but just the driving record by itself is legally

---

[1] Trejo provided unidentified caselaw to the trial court in support of his objection.

insufficient to prove a conviction for a prior offense. And so we are asking that the—any evidence of his convictions for speeding not be allowed in front of the jury.

And so I guess we are objecting to—prior to their request for admission that that be introduced into evidence.

The State responded that it was not attempting to prove Trejo's prior convictions for speeding, but rather that it was offering Trejo's driving record *merely* as evidence of bad acts and character. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07; *Haley*, 173 S.W.3d at 515.

So on the driver's record, if you see in the case that they're providing, right in that case they're charged with DWI third and they're trying to prove up a prior—they are trying to establish the prior convictions in order to establish jurisdiction in that case. And so they're saying that that driving record—the certified driving record is not sufficient to prove the convictions. But in this case we're simply offering it as—not as an enhancement purpose, not to enhance his punishment in some way, not to establish jurisdiction. It's simply going to bad acts, character of the defendant,[2] which is allowed in the punishment phase at this point.

The trial court overruled Trejo's objection, stating, "Let me see what you intend to introduce, please. Your objection is overruled. That will be admitted. Take this back."[3] *See Schultze*, 177 S.W.3d at 40. Trejo did not object or respond to the State's bad acts and character argument. *See Palomo*, 352 S.W.3d at 92. Even when the State offered Trejo's driving record as an exhibit, Trejo made no objection to its use as evidence of prior bad acts or extraneous offenses. *See* TEX. R. APP. P. 33.1. Instead, he reiterated his previous objection and added "improper predicate, improper witness to admit this evidence," which the trial court also overruled.

Trejo now argues that a jury should only be permitted to consider extraneous offenses or bad acts at sentencing if they are proven beyond a reasonable doubt. *Contra id.* (citing *Davis*, 315

---

[2] We understand this to mean "character evidence in the form of … extraneous-offense evidence." *See Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (citing TEX. CODE CRIM. PROC. ANN. art. 37.07).
[3] Exhibit 117, a certified copy of Trejo's driving record.

S.W.3d at 914; *Mitchell*, 931 S.W.2d at 954). As stated, it is the jury who decides whether extraneous offenses or bad acts are proven beyond a reasonable doubt. *See id.* (citing *Mitchell*, 931 S.W.2d at 953–54). The jury should be instructed not to consider an extraneous offense if the evidence does not establish it beyond a reasonable doubt. *See Mitchell*, 931 S.W.2d at 954. But to stop the jury from considering potentially insufficient evidence of prior bad acts after the State has closed its case, i.e., evidence that could not establish an extraneous offense beyond a reasonable doubt, Trejo would have had to move to strike the inadequate evidence, which he did not do. *See* TEX. R. APP. P. 33.1; *Huddleston*, 485 U.S. at 690 n.7; *Palomo*, 352 S.W.3d at 92. We conclude that Trejo waived the issue of whether the State could or did present sufficient evidence in support of its bad acts/extraneous offense evidence. *See Palomo*, 352 S.W.3d at 92. We also conclude that Trejo waived the related issue of whether Trejo's driving record was properly linked to him, since he did not object to the link at trial and, in fact, argued the opposite, i.e., that a driving record could be used to link a defendant to a conviction but not to prove the conviction. *See* TEX. R. APP. P. 33.1. We overrule Trejo's first issue.

### ADMISSIBILITY OF SERGEANT WINDSOR'S EXPERT TESTIMONY

**A.     Parties' Arguments**

In his second and third issues, which Trejo has briefed collectively, Trejo argues that the trial court erred by allowing Sergeant Windsor to testify to Trejo's approximate speed at the time of the crash because he could not explain the innerworkings of the software he used to read Trejo's car's collision data. Trejo argues that his Sixth Amendment right to confront adverse witnesses was violated as a result.

The State argues that the trial court acted within its discretion in admitting Sergeant Windsor's expert testimony because it was reliable. The State argues that Trejo's Sixth

Amendment right to confront adverse witnesses was not violated because Sergeant Windsor generated the data report regarding Trejo's crash and was available for cross-examination.

**B.     Standard of Review**

"An appellate court reviews a trial court's admission of evidence and expert testimony for an abuse of discretion, i.e., whether the trial court's ruling was within the zone of reasonable disagreement." *Vitela v. State*, 649 S.W.3d 649, 656 (Tex. App.—San Antonio 2022, pet. ref'd) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)).  But we review Sixth Amendment questions of law de novo.  *Boutang v. State*, 402 S.W.3d 782, 787 (Tex. App.—San Antonio 2013, pet. ref'd) (citing *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010)).

**C.     Law**

*1.  Admissibility of Expert Testimony Under Rule 702*

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702; *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Wooten v. State*, 267 S.W.3d 289, 297 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).  But the trial court must first decide whether the expert and the proposed testimony satisfy Rule 702 based on the rule's three constituent parts regarding qualification, reliability, and relevance: "(1) The witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rhomer*, 569 S.W.3d at 669 (quoting *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)).

The qualification prong depends, not on whether the proffered expert is the best possible witness, but rather, whether the expert's qualifications would assist the jury in determining an issue

of fact, i.e., whether the expert has sufficient background in his area of testimony and whether he is a good "fit" for the matter in question. *Id.* at 669–70. For example, the accident reconstructionist in *Rhomer* was considered qualified because he was an experienced police officer who "investigated at least a thousand vehicular crashes and had testified once as an accident reconstruction expert in a case that involved two cars and a pickup truck." *Id.* at 667, 671. He had attended three courses related to vehicle collisions, learned the basics of crash investigation in an intermediate crash investigation course, attended an advanced course at Texas A & M University, and took a reconstruction course and courses on accidents involving pedestrians and bicycles. *See id.* He testified that his accident reconstruction course work totaled 501 hours. *See id.* The *Rhomer* court determined that the reconstructionist's "qualifications would have assisted the jury in determining issues of fact, namely, where and how the collision happened." *Id.* at 671.

The reliability requirement may be more or less exacting based on the type of expert testimony being introduced, i.e., soft or hard science. *See id.* at 671 (citing *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). In *Rhomer*, the court concluded that an accident reconstructionist's testimony was admissible under the *Nenno* standard for soft science where the expert's opinions were based on his training and experience more than on a hard scientific inquiry such as calculating a vehicle's pre-impact speed. *See id.* at 671; *accord Mireles v. State*, No. 08-19-00221-CR, 2022 WL 3572859, at *9 (Tex. App.—El Paso Aug. 19, 2022, pet. ref'd) (mem. op., not designated for publication). "The *Nenno* test asks whether (1) the field of expertise is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Id.* (citing *Nenno*, 970 S.W.2d at 561). The *Rhomer* court stated: "(1) the field of accident reconstruction is

a legitimate one, (2) the subject matter of [the expert's] testimony was within the scope of that field, and (3) his testimony properly relied upon and utilized the principles involved in the field, i.e., examining the physical evidence in the context of the crash site to draw conclusions about the location and cause of the crash." *Id*. at 672.

Admissibility may also depend on whether the probative value of the proffered expert testimony "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Blasdell v. State*, 384 S.W.3d 824, 831 n.18 (Tex. Crim. App. 2012) (citing TEX. R. EVID. 403); *see also Kelly*, 824 S.W.2d at 572 n.11 ("Rule 702 incorporates Rule 402 and 403 analyses."). As the Court of Criminal Appeals has stated: "A judicious application of the Rule 702 helpfulness standard and Rule 403 balancing factors is necessary…on a case-by-case basis…[and] will depend upon factors such as the content of the testimony, the context in which it is offered, and the state of the evidence." *Id*. at 831 (citing *Ortiz v. State*, 834 S.W.2d 343, 347 (Tex. Crim. App. 1992), *superseded by statute on other grounds as stated in Ellison v. State*, 201 S.W.3d 714, 717 (Tex. Crim. App. 2006)).

Once this inquiry is satisfied, an expert can expect that his testimony will be subject to rigorous cross-examination. *See, e.g., In re Melton*, 597 A.2d 892, 903 (D.C. 1991) (citing *In re Japanese Elec. Prods. Antitrust Litig*., 723 F.2d 238, 277 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986). But objections to its reliability, such as complaints of analytical gaps, will most likely go to the weight of the evidence rather than to its admissibility. *Id*. at 904 (citing *Bertolotti v. Dugger*, 883 F.2d 1503, 1517 (11th Cir. 1989), cert. denied, 497 U.S. 1032 (1990)); *Taylor v. State*, 555 S.W.3d 765, 780 (Tex. App.—Amarillo 2018, pet. ref'd). "Juries are intelligent enough, in light of the availability of such cross-examination, to ignore what is

unreliable or unhelpful." *In re Melton*, 597 A.2d at 903 (citing *In re Japanese Elec. Prods. Antitrust Litig*., 723 F.2d at 279).

We note that an accident reconstructionist's lack of knowledge regarding the innerworkings of the data system or software he uses to complete his work does not constitute an analytical gap. *Brantley v. State*, 606 S.W.3d 328, 341 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010) (rejecting the argument that a reconstructionist's "lack of knowledge of the manufacturing process of the black box and its accelerometer or of the black box's error rate affected the reliability of his testimony" because his testimony "tied the black box data into evidence obtained at the scene, which supported his conclusions").

### 2. *Admissibility of Expert Testimony Under the Sixth Amendment*

Under the Sixth Amendment, a defendant has a constitutional right to confront the witnesses against him. *Boutang*, 402 S.W.3d at 786. (citing U.S. CONST. amend. VI). This protection includes the right to cross-examine testing analysts who produce reports that the State wishes to admit at trial. *See Burch v. State*, 401 S.W.3d 634, 638 (Tex. Crim. App. 2013) (citing *Bullcoming v. New Mexico*, 564 U.S. 647 (2011)). It does not, however, disqualify an expert from testifying if he is unable to answer all the defendant's questions on cross-examination. *See Webb v. Tex*., 409 U.S. 95, 98 (1972) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense."). An expert's capacity to answer questions related to his area of testimony is measured and evaluated under Rule 702 as a "fit" test regarding an expert's helpfulness to the jury. *Tillman v. State*, 354 S.W.3d 425, 438 (Tex. Crim. App. 2011); *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996).

**D.    Analysis**

*1. Trial Testimony*

When Sergeant Windsor testified at trial, the trial court initiated the voir dire examination:

> Sergeant, you're here because I believe the State intends to proffer you as an expert witness, maybe in accident reconstruction or something to that effect, I believe. So, the defense has the right and frankly an obligation to make sure that you have the credentials to testify that way. And so, the parties are going to proceed to try to establish those credentials, okay? Y'all may proceed.

Regarding his credentials, Sergeant Windsor testified that he was assigned to the traffic investigations detail in September 2017. In that role, he received intermediate and advanced crash investigation training. Both training courses lasted one week and were given by Texas A&M. He also trained to be an analyst for the air bag control modules at the Bexar County Sheriff's Academy, and he learned to be a trainer for downloading or imaging air bag control modules. As an analyst and trainer, Sergeant Windsor testified several times as an expert at trial.

Regarding the relevance of his expertise, Sergeant Windsor testified that data retrieved from airbag control modules was regularly used in traffic investigations, especially in "criminal death cases and ones involving serious bodily injury." He testified that he has imaged ACMs to retrieve collision data over a hundred times and that the data was consistently corroborated by physical evidence from crash sites.

In Trejo's case, Sergeant Windsor requested and was granted a search warrant to retrieve collision data from Trejo's car. He stated that he imaged the car's ACM successfully and that it was corroborated by physical evidence from the crash site. For example, there was no roadway evidence of braking, and the car's collision data confirmed that Trejo was not engaging his brakes at the point of impact. Also, the data suggested the car was involved in a frontal collision, which was corroborated by the physical crash evidence.

Sergeant Windsor testified that Trejo's ACM recorded his car's speed during the five seconds leading up to the crash. With a minor adjustment for Trejo's tire size, evidence showed that Trejo was driving approximately eighty miles per hour at five seconds prior to impact. The data, as well as some available surveillance footage from a nearby HEB, showed that Trejo pressed his brake pedal twice in the five seconds before the crash. Then the crash data showed that Trejo accelerated into the collision. In the tenth of a second prior to impact, Trejo was driving approximately seventy miles per hour. Sergeant Windsor confirmed that the collision damage corroborated the car's speed data for the crash. He also confirmed that a deputy witness estimated Trejo's speed prior to the crash to be around eighty-four or eighty-five miles per hour.

When asked about the version of software used to create the car's data report, which was not current at the time of trial, Sergeant Windsor explained that software company Bosch regularly issues updates, but that those updates may not result in changes to data reports. Here, Sergeant Windsor used version 17.7 to create the original crash investigation report. Prior to trial, he compared the report to a reading from version 17.9; he testified that there were no changes to the report after two software updates. Trejo pointed out that since the report was created, Bosch issued twelve more software updates, but did not elaborate on the updates or provide a report with different results.

Trejo questioned whether Sergeant Windsor could speak to the internal workings of the Bosch data translator and identify what, if any, event data may be missing from the report generated by the Bosch software, since the report contained a disclaimer that some data retrieved by the program may not be translated by the program. Sergeant Windsor answered that he could not explain how the software translated data retrieved from a car's ACM or identify what data might be excluded in the translation. He could only testify that the Bosch software reported a complete and successful data translation in Trejo's case.

Trejo questioned Sergeant Windsor as to how Bosch's software calculated the speed of a car in the five seconds prior to collision. Sergeant Windsor answered that the speed data was derived from the car's drive wheels but could not describe the computer process nor replicate it personally. When Trejo suggested that Sergeant Windsor would be unable to check for errors or troubleshoot issues that might arise in the software's speed analysis, Sergeant Windsor answered that the software detects and reports its own errors and that none were detected or reported in Trejo's case.

Lastly, Trejo challenged Sergeant Windsor's speed conclusions based on the car's tire size because Sergeant Windsor did not and could not calculate the conclusion independently. Sergeant Windsor stated that he used a commercially available web-based calculator to adjust the report's speed estimate because Trejo's tires were slightly wider than default. The difference increased Trejo's estimated speed by about two miles per hour. Sergeant Windsor testified that the use of the web-based calculator to make the speed adjustment based on the size of a car's tires was a generally accepted practice among accident reconstructionists.

After the voir dire examination, Trejo objected to Sergeant Windsor's ability to answer questions about the Bosch software:

> We'll let you make your own decision as per the expert. But our objection is going to be [Trejo] is going to get denied his Sixth Amendment right to confrontation because to question and challenge this evidence and test this evidence before this jury, this witness cannot answer basic questions about it.

The trial court overruled the objection and allowed Sergeant Windsor to provide expert testimony.

### 2. *Admissibility Under Rule 702*

Trejo now reiterates his argument that the State deprived him of the ability to effectively test the State's evidence before the jury because Sergeant Windsor could not answer his questions

about the innerworkings of Trejo's ACM or the Bosch software used to read it, but he effectively overstates the State's burden under Rule 702.[4]  *See Rhomer*, 569 S.W.3d at 670.

Sergeant Windsor was qualified to testify regarding traffic investigations and ACM imaging by virtue of his training and experience.  *See id*. at 671.  He was the right fit because his background in accident reconstruction and ACM imaging made it possible for him to provide conclusions about Trejo's driving at the time of his collision, which would have helped the jury decide whether Trejo was reckless.  *See id*. at 669; TEX. PENAL CODE ANN. § 19.04 (manslaughter).  Sergeant Windsor's testimony was reliable because it was based on evidence that he observed at the scene compared against the report produced from Trejo's car's ACM.  *See id*. at 672 n.1.

Like in *Rhomer*, we agree that "(1) the field of accident reconstruction is a legitimate one, (2) the subject matter of [the expert's] testimony was within the scope of that field, and (3) his testimony properly relied upon and utilized the principles involved in the field, i.e., examining the physical evidence in the context of the crash site to draw conclusions about the location and cause of the crash."  *Id*. at 672.

To the extent that Trejo's cross-examination revealed the limits of Sergeant Windsor's knowledge of the Bosch software he used to perform his investigation, we disagree that Trejo has established a basis for witness exclusion, as the answers to these questions lie outside the scope of proffered expertise.  *See Brantley v. State*, 606 S.W.3d at 341.  The trial court did not abuse its discretion in admitting his testimony.  *See id*.; *Rhomer*, 569 S.W.3d at 672.

---

[4] Trejo did not object under Rule 702, but to the extent that his objection can be understood to challenge Sergeant Windsor's qualification or the reliability of his testimony, we conduct a Rule 702 review.  *Bekendam v. State*, 441 S.W.3d 295, 301 (Tex. Crim. App. 2014).

### 3. *Admissibility Under the Sixth Amendment*

When Trejo argued at trial that Sergeant Windsor's knowledge base was too narrow to afford Trejo a meaningful cross-examination, he conflated his Sixth Amendment right to present a full defense with his right to thoroughly cross-examine the State's witnesses. *See Webb v. Tex.*, 409 U.S. at 98. He now suggests that Sergeant Windsor's limitations should have resulted in his exclusion as a witness under the Sixth Amendment, because the "State still needs to have a witness who is competent to testify to the truth of the statements in the report." In support of his argument, Trejo cites an Intoxilyzer case: *Boutang v. State*, 402 S.W.3d 782, 788 (Tex. App.—San Antonio 2013, pet. ref'd). We must note here that the admissibility of Intoxilyzer testimony depends on specific and technical requirements. *See id.* (citing *Harrell v. State*, 725 S.W.2d 208, 209–10 (Tex. Crim. App. 1986)). In *Boutang*, having a witness who was competent "to testify as to the truth of the report's statements" meant that it was sufficient for the testifying analyst to be a certified Intoxilyzer operator who "was familiar with the machine's maintenance, calibration, and functioning." *Id*. We concluded that the person who mixed a reference-solution for blood-alcohol testing was not required to lay foundation at trial based, in part, on the holding in *Bullcoming* that the Sixth Amendment is satisfied when the State calls the author of a report to be available for cross-examination as to its conclusions. *Id*. (citing *Bullcoming v. New Mexico*, 564 U.S. 647 (2011)). That is exactly what happened in this case—the State called the analyst who generated the collision data report to testify to the truth of its contents and to be available for cross-examination, thereby satisfying the requirements of the Sixth Amendment right to confront adverse witnesses. *See id*.

The State offers *Nguyen v. State*, No. 05-20-00241-CR, 2022 WL 3714494, at *6 (Tex. App.—Dallas Aug. 29, 2022, pet. ref'd) (mem. op., not designated for publication), as a case where the Fifth Court of Appeals considered an appellant's complaint that the accident reconstructionist's

report, which was produced using collision data software, violated his Sixth Amendment right to confront adverse witnesses. While the reasoning in *Nguyen* is well-taken, the difference between the two cases is that Nguyen complained that the expert's report was hearsay, while Trejo complains that Sergeant Windsor was not knowledgeable enough to justify the conclusions in his report. But to the degree that we can read Trejo's argument to mean that the innerworkings of Trejo's ACM and the Bosch software used to read it could be considered testimonial, we align with *Nguyen* and reject Trejo's argument. *See Nguyen*, 2022 WL 3714494, at *8 (citing *State v. Ziegler*, 855 N.W.2d 551, 557 (Minn. Ct. App. 2014)). We overrule Trejo's second and third issues.

## CONCLUSION

Based on the above, we conclude that Trejo waived his extraneous offense argument against the admission of his driving record at his punishment-phase trial. We also conclude that the trial court did not abuse its discretion under Texas Rule of Evidence 702 by admitting Sergeant Windsor's expert testimony regarding his crash investigation. Lastly, we disagree that the admission of Sergeant Windsor's testimony violated his Sixth Amendment right to confront adverse witnesses. The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

Publish