

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-24-00152-CR

Christopher Luis **DEL TORO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR5917
Honorable Raymond Angelini, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Lori I. Valenzuela, Justice
                Lori Massey Brissette, Justice

Delivered and Filed: July 23, 2025

AFFIRMED

After a trial on the merits, a jury convicted appellant Christopher Luis Del Toro of

intoxication manslaughter, and the trial court sentenced him to sixty years' confinement. On

appeal, Del Toro raises three issues: (1) the trial court erred in finding sufficient probable cause to

issue a warrant to draw Del Toro's blood; (2) the trial court erred by admitting the results of Del

Toro's blood draw in violation of the Texas Transportation Code; and (3) the trial court erred in

admitting evidence obtained from Del Toro's vehicle's airbag control module (the "Black Box"). We affirm.

## BACKGROUND

On March 27, 2022, Jessica Brill was driving in South San Antonio shortly before midnight with her daughter, Megan Gonzales, in the passenger seat. Del Toro was driving his Chevy SUV on the opposite side of the same street. The two vehicles collided head-on, ejecting Brill from her vehicle. Gonzales suffered minor physical injuries; however, Brill died from her injuries. The Jaws of Life were used to cut Del Toro from his vehicle, and he was rushed to the hospital by ambulance.

San Antonio Police ("SAPD") Officer Alexander Mena, who was also at the crash scene, followed the ambulance to the hospital and testified that it was there that he first smelled intoxicants emanating from Del Toro. Mena approached Del Toro to speak with him and request consent for a blood draw. According to Mena, Del Toro was awake but in pain and not focused on his questions. Because Del Toro did not answer Mena's questions, Mena drafted a probable cause affidavit and prepared to seek a warrant to draw Mena's blood. Mena used a form provided by SAPD to draft his affidavit.

In his affidavit, Mena, among other things, attested to two paragraphs at issue in this appeal—C. and H.:

C.    During my encounter with the suspect, I requested performance of field sobriety tests by the suspect and recorded the results and my observations of the suspect's performance of field sobriety tests and signs of intoxication in the SFST SCORING SHEET prepared in connection with the report filed in Agency Number  SAPD22063062 .

H.    Additionally, after placing the suspect under arrest for Driving While Intoxicated, I requested a sample of the suspect's breath and/or blood, which the suspect refused to provide a sample in violation of the Texas Implied Consent law.  This is an indication to me that suspect is attempting to hide evidence of his/her intoxication.

Based on Mena's affidavit, a warrant was issued to draw Del Toro's blood. Approximately four and a half hours after the crash, Del Toro's blood alcohol concentration was 0.188.

On July 15, 2022, Del Toro was indicted on one count of intoxication manslaughter, one count of manslaughter, and one count of aggravated assault with a deadly weapon. The indictment also included a repeat offender allegation. Del Toro's trial commenced on February 16, 2024. During the State's case in chief, Mena testified that at the crash scene: he was the responding officer; he identified Del Toro behind the wheel of the Chevy SUV; and he could not speak to Del Toro because emergency services were working to extract Del Toro from his vehicle. Given Del Toro's condition, Mena told the jury that he did not ask Del Toro to perform field sobriety tests. Mena stated that after leaving the crash scene, he followed the ambulance carrying Del Toro to the hospital.

Mena testified that at the hospital, he smelled intoxicants coming from Del Toro, so he approached Del Toro to question him after the medical staff indicated it was safe to do so. Although Del Toro was conscious, Mena expressed that Del Toro was not focused on his questions because of his injuries. Therefore, Mena stated that he applied for and obtained a warrant to draw Del Toro's blood. At this point, Del Toro objected to certain statements in Mena's probable cause affidavit—specifically paragraphs C. and H.—in which Mena had attested that Del Toro performed field sobriety tests and that Del Toro refused to provide a voluntary blood sample, neither of which, based on Mena's testimony, was actually requested nor performed. Due to the discrepancies between Mena's probable cause affidavit and his testimony at trial, the trial court held a *Franks* hearing outside the jury's presence. *See generally Franks v. Delaware*, 438 U.S. 154 (1978).

During the *Franks* hearing, Mena testified: at the crash scene, he was unable to determine if Del Toro was intoxicated because of Del Toro's injures, but that he did attempt to make contact with Del Toro at the hospital but was unsuccessful; he did not ask Del Toro for a breath sample given the facts of the case but, before beginning the process of requesting a warrant, he attempted to investigate the crash using other "driving factors;"[1] he never asked Del Toro to conduct field sobriety tests at the scene or any other time that day because Del Toro was in and out of consciousness; Del Toro did not make any admissions to him; at the hospital, he placed Del Toro under arrest and read him his rights, including rights relevant to a blood draw; Del Toro was in pain, not focused on his questions, and did not respond to his request for a voluntary blood draw, which counts as a refusal under SAPD policy; and that he used a form affidavit provided to him to apply for the warrant. At the conclusion of the hearing, the trial court stated that it was striking the inaccurate information from Mena's affidavit except for paragraph D., which states:

D.    Additional facts leading me to believe that the suspect was intoxicated while operating a motor vehicle in a public place are as follows:

I observed the listed APV driver later known as AP1 in the driver's seat stuck in the APV. I observed that AP1 had blood on his face and his clothing. I was unable to talk to AP1 because EMS was currently treating him and attempting to get him out of the APV. AP1 was transported to BAMMC hospital. While at the hospital I was able to contact AP1 and AP1 was medically treated and was unable to talk to me due to injuries and medication given to AP1 by hospital staff. While in close contact with AP1 I could smell the strong odor of intoxicants coming off of AP1's person/breath while I was near his face attempting to hear him respond to me. Due to witness statement of vehicle in motion and the odor of intoxicants I believe AP1 lost his mental and physical faculties due to the introduction of an intoxicant into his body. AP1 was not offered SFST's due to injuries.

In addition to Mena's affidavit, Del Toro also objected to an "Affidavit of Person Who Withdrew Blood and Nurse's Checklist" (the "Nurse's affidavit") attached to the executed warrant on the basis that it was not properly notarized, which, Del Toro asserted, was necessary to prove the person who drew his blood was a registered nurse. Because of the Nurse's affidavit's

---

[1] Mena testified that he "gathered [the factors] from the witnesses," but did not detail what the factors were.

deficiencies, Del Toro concluded that the blood draw failed to comply with the Texas Transportation Code. *See* TEX. TRANSP. CODE § 724.017(a) (listing the persons qualified to take a blood specimen pursuant to implied consent). The trial court excused Mena from further testimony and asked the parties to research the Nurse's affidavit issue before Mena's testimony continued. After further research by the parties, it was revealed that the Nurse's affidavit did not require notarization by statute; the form provided by SAPD included a blank space for notarization per SAPD policies. Del Toro's counsel then conceded that Mena's failure to have the Nurse's affidavit notarized goes to the weight of the evidence that SAPD did not follow its procedures. When Mena retook the stand, he concluded his testimony by stating that he "believed" the person who drew Del Toro's blood at the hospital was a registered nurse and that the blood draw was conducted pursuant to the warrant.

After hearing from several foundational witnesses, eyewitnesses, and Gonzales, the State called Department of Public Safety forensic scientist Dr. Charlotte Baker. Baker testified that based on her testing of Del Toro's blood sample provided by the State, Del Toro's blood alcohol concentration at the time of the blood draw was 0.188.

The State's final witness was SAPD Detective Jorge Coronado. Over Del Toro's objections, Coronado testified that he was qualified to download a vehicle's Black Box data using special tools he learned to use during a 40-hour class. Specifically, the trial court overruled Del Toro's objection that the State was required to provide an expert witness from the vehicle's Black Box manufacturer, but admonished Coronado that he was not qualified to testify to the authenticity of the data's calculations. Based on the data extracted from Del Toro's vehicle's Black Box, Coronado told the jury that Del Toro had not applied his brakes before the crash, was traveling approximately sixty-five miles per hour, and was not wearing a seatbelt.

The State and Del Toro then rested. The jury found Del Toro guilty of intoxication manslaughter and made an affirmative finding of a deadly weapon. The trial court found the enhancement allegation to be true and sentenced Del Toro to sixty years' confinement.[2]

## ISSUES ONE & TWO: PROBABLE CAUSE REVIEW AND IMPLIED CONSENT

### *Probable Cause Review — Standard of Review and Applicable Law*

Del Toro was convicted of intoxication manslaughter. A person commits the offense of intoxication manslaughter "if the person: (1) operates a motor vehicle in a public place . . . ; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake." TEX. PENAL CODE § 49.08(a). At trial, the State principally relied on the blood alcohol content of Del Toro's blood taken pursuant to the warrant to prove intoxication.

The "[i]ssuance of a search warrant depends on probable cause[.]" *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021); *Farhat v. State*, 337 S.W.3d 302, 306 (Tex. App.—Fort Worth 2011, pet. ref'd) ("Article 18.01(c) requires an affidavit to set forth facts establishing that (1) a specific offense has been committed, (2) the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense, and (3) the item is located at or on the person, place, or thing to be searched."); TEX. CODE CRIM. PROC. art. 18.01(c). "Probable cause exists if there is a fair probability that evidence of a crime will be found at a specified location." *Diaz*, 632 S.W.3d at 892. "The test is whether a reasonable reading of the supporting affidavit provides a substantial basis for the magistrate's conclusion that probable cause existed." *Id*. Generally, "[i]n determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to

---

[2] The jury also found Del Toro guilty of criminally negligent homicide. However, the State waived the guilty finding of criminally negligent homicide during punishment; therefore, Del Toro was only sentenced on the guilty finding of intoxication manslaughter.

considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit." *Hyland v. State*, 574 S.W.3d 904, 910–11 (Tex. Crim. App. 2019); *Gonzales v. State*, 481 S.W.3d 300, 306 (Tex. App.—San Antonio 2015, no pet.) ("The affidavit must contain sufficient information to allow the issuing magistrate to determine independently whether probable cause exists because the magistrate's decision 'cannot be a mere ratification of the bare conclusions of others.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

"[A] reviewing court applies a presumption of validity regarding a magistrate's determination that a search warrant affidavit supports a finding of probable cause." *Hyland*, 574 S.W.3d at 911. "As a result, when reviewing a magistrate's probable cause determination, a reviewing court—which in this context can be a trial judge or an appellate court—must ordinarily view the magistrate's decision to issue the warrant with great deference." *Id.* (internal quotation marks omitted).

"In *Franks v. Delaware* the United States Supreme Court held that 'where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.'" *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003) (quoting *Franks*, 438 U.S. at 155–56). Because "[a]n affidavit supporting a search warrant begins with a presumption of validity . . . the defendant has the burden of making a preliminary showing of deliberate falsehoods in that affidavit before he is entitled to a *Franks* hearing." *Cates*, 120 S.W.3d at 355. To satisfy his burden, "[t]he defendant must: (1) [a]llege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the

portion of the affidavit claimed to be false; (2) [a]ccompany these allegations with an offer of proof stating the supporting reasons; and (3) [s]how that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant." *Id.* at 356 (internal quotation marks omitted).

If the defendant satisfies his burden by the preponderance of the evidence, the reviewing court then re-examines the probable cause affidavit without the excised portions of the affidavit. *Hyland*, 574 S.W.3d at 911. In its re-examination, "the reviewing court should no longer give deference to the magistrate's initial probable cause determination—and should therefore abandon the usual substantial basis analysis—because the reviewing court is now examining a new, different affidavit." *Id.* (internal quotation marks omitted). "The question for the reviewing court becomes the same as it would be for a magistrate conducting an initial review of a search warrant affidavit: Whether the remaining statements in the affidavit establish probable cause." *Id.* "In resolving that question, 'reviewing courts are still required to read the purged affidavit in accordance with *Illinois v. Gates*[,]' and must therefore undertake a totality-of-the-circumstances approach." *Id.* (citing *State v. Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015)) (alteration in original); *Gates*, 462 U.S. at 235–36.

*Analysis*

On appeal, the State first contends this issue is not preserved for our review because Del Toro failed to satisfy his initial burden to be entitled to a *Franks* hearing. *See Franks*, 438 U.S. at 155–56; *Cates*, 120 S.W.3d at 356. Del Toro argues that preservation is not an issue because the record is clear that the trial court held a *Franks* hearing, that both parties were aware of the nature of the hearing, and that the State did not object nor otherwise raise an issue with the trial court's holding of the *Franks* hearing. *See Cates*, 120 S.W.3d at 357 ("In [*Ramsey v. State*, 579 S.W.2d

920 (Tex. Crim. App. 1979)] we held that it was sufficient for defense counsel to allege a deliberate falsehood, specifically point out that portion of the affidavit alleged to be false, and make an oral offer of proof (which the trial court called a bill of exception) to satisfy the substantial preliminary showing required by *Franks*."); *cf. Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007) ("[T]he record does not support a finding that the trial court was even aware at the original hearing on the motion to suppress that a *Franks* violation was at issue."). Assuming without deciding that Del Toro properly preserved this issue, we ultimately hold Mena's excised and reformed probable cause affidavit sufficient to support the issuance of the warrant in this case.

At the conclusion of the *Franks* hearing, the trial court orally rendered the following:

| | |
|---|---|
| Trial Court: | Well, I think D is enough to get the search warrant in, but I kick out everything else. I'm not sure that D is — whatever you call it — can come in. I mean, he's not even conscious when you're reading. |
| State: | Understand, Your Honor. So the refusal and the statutory warning cannot come in? |
| Trial Court: | You can't talk to him about that. He can. He can. |
| Defense Counsel: | So what's your ruling, Your Honor? |
| Trial Court: | That I kick out everything else in this warrant except for paragraph D, and that might be enough to get the search warrant for his blood. The problem I have is, reading him his rights are — "given the opportunity to sign DIC 24, indicating refusal," is all not correct. It is a lie, actually, because he's unconscious. |
| State: | I will not introduce evidence that he refused – |
| Trial Court: | Good God. |
| State: | – to provide a sample. . . . So we're striking, then, the refusal language. |
| Trial Court: | Uh-huh. |
| State: | But the warrant still comes in for the blood? |

| Trial Court: | Uh-huh. |
|---|---|
| State: | And I'll offer no evidence of the refusal. |
| Trial Court: | Now, he can ask if he was doing all this crap and if he lied on the affidavit. He can do all that, got it? |
| Defense Counsel: | And, Judge, at the appropriate time, I will object to the admission and then make the appropriate objections at that point. |
| Trial Court: | Yeah, okay. |

On appeal, the parties dispute whether the trial court struck the entire affidavit except for paragraph D., or if the trial court only struck paragraphs C. and H. Del Toro argues we should explicitly read the trial court's statement that it struck every item in the affidavit except for paragraph D., including the portions of the affidavit not challenged at trial. On the other hand, the State argues that in context, the trial court only intended to strike paragraphs C. and H. Based on the record, we agree with the State.

Only paragraphs C. and H. were challenged by Del Toro during trial, and Mena's trial testimony only supports a falsity finding in these two paragraphs. *See e.g., Bordelon v. State*, 673 S.W.3d 775, 784 (Tex. App.—Dallas 2023, no pet.) ("By oral ruling, the trial court excluded any testimonial hearsay from the affidavit and admitted the affidavit only for permissible purposes. Nothing in the record undermines our presumption that the trial court was faithful to this ruling."). Now that we have determined the proper scope of Mena's reformed affidavit, we must next decide whether the reformed affidavit provided sufficient probable cause to issue the warrant to draw Del Toro's blood.

In reaching our disposition on this issue, we are guided by the Texas Court of Criminal Appeals's analysis in *Hyland v. State*, a case that has substantial factual similarities to this case. *See* 574 S.W.3d 904. In *Hyland*, appellant left a bar on his motorcycle with his wife riding in the

rear. *Id.* at 907. Appellant lost control of the bike, killing his wife and severely injuring himself. *Id.* Because appellant was unconscious at the hospital, a police officer used a pre-printed form probable cause affidavit and obtained a warrant to draw appellant's blood. *Id.* at 907–08. Appellant's blood alcohol concentration was 0.19 at the time of the crash. *Id.* at 908. Appellant attacked the officer's probable cause affidavit, and the trial court held a *Franks* hearing, ultimately striking portions of the affidavit in which the officer attested—via the pre-printed form—that field sobriety tests were conducted when they were not, and that appellant's unconsciousness amounted to a refusal to provide a voluntarily sample. *Id.* at 909–10. The Court ultimately held the reformed affidavit sufficient to introduce the blood evidence. *Id.* at 912–16.

With *Hyland* in focus, and after reviewing the four corners of Mena's affidavit under a totality of the circumstances, drawing reasonable inferences drawn therefrom, we conclude that Mena's reformed affidavit leads to a reasonable conclusion that a blood-alcohol test had a fair probability to uncover evidence that Del Toro had been driving in a public place while intoxicated. *Id.* at 911. Because we hold Mena's probable cause affidavit sufficient to procure the warrant to draw Del Toro's blood, it is unnecessary for us to reach Del Toro's second issue, as Texas's implied consent laws are inapplicable where a blood draw was executed pursuant to a valid warrant. *State v. Johnston*, 336 S.W.3d 649, 660–61 (Tex. Crim. App. 2011); *State v. Guzman*, 439 S.W.3d 482, 486 (Tex. App.—San Antonio 2014, no pet.).

We overrule Del Toro's first issue.

### ISSUE THREE: BLACK BOX DATA

In his final issue, Del Toro argues the trial court erred in admitting the Black Box data "without providing the proper predicate to support the underlying scientific theory for the data stored therein" and that such error violated his rights under the Confrontation Clause. *See* U.S.

CONST. amend. VI; TEX. CONST. art. I, § 10; *Bullcoming v. New Mexico*, 564 U.S. 647, 662 (2011). That is, Del Toro asserts that Coronado was an incompetent witness because he was not trained in interpreting the data procured from the Black Box. Del Toro concludes that to properly introduce the data into evidence, the State was required to present a witness from the manufacturer of the Black Box. The State first contends Del Toro failed to preserve this issue with a proper objection. Alternatively, the State asserts that there was no Confrontation Clause violation because Coronado testified at trial and was available for cross-examination. Like Del Toro's first issue, assuming without deciding that Del Toro raised a proper objection, we ultimately hold that there was no violation of the Confrontation Clause.

*Standard of Review and Applicable Law*

"An appellate court reviews a trial court's admission of evidence and expert testimony for an abuse of discretion, i.e., whether the trial court's ruling was within the zone of reasonable disagreement." *Vitela v. State*, 649 S.W.3d 649, 656 (Tex. App.—San Antonio 2022, pet. ref'd). "Under the Sixth Amendment, a defendant has a constitutional right to confront the witnesses against him." *Trejo v. State*, 683 S.W.3d 815, 824 (Tex. App.—San Antonio 2023, no pet.). "This protection includes the right to cross-examine testing analysts who produce reports that the State wishes to admit at trial." *Id*. "It does not, however, disqualify an expert from testifying if he is unable to answer all the defendant's questions on cross-examination." *Id*. "An expert's capacity to answer questions related to his area of testimony is measured and evaluated under Rule 702 as a 'fit' test regarding an expert's helpfulness to the jury." *Id.* at 824–25.

*Analysis*

Addressing his credentials, Coronado testified that he was assigned to the traffic investigations unit at the time of the crash. As a member of the traffic investigations unit, Coronado

testified that he had received specialized training, including a 40-hour crash data retrieval class, and was a certified crash retrieval analyst. As part of the 40-hour class, Coronado explained that he learned how to use the tools to download a vehicle's Black Box data and decipher the information. In order to use his knowledge to retrieve the Black Box data from Del Toro's vehicle, Coronado told the court he applied for and obtained a warrant. Coronado explained that the data captured from a Black Box includes speed, whether the person was wearing a seatbelt, and the vehicle's ignition cycles. Using the tools from the requisite class, Coronado attested that he was able to transmit the data from a vehicle's Black Box into a PDF file. Specifically addressing the data obtained from Del Toro's Black Box, Coronado testified that Del Toro was traveling sixty-five miles per hour, was not wearing a seatbelt, and did not apply his brakes before the crash.[3] Coronado admitted that he was not involved in the methodology of calculating the data obtained from Del Toro's Black Box and could only testify to the output and his methods of obtaining the data.

In *Trejo*, the appellant made an argument like Del Toro's. *See* 683 S.W.3d 815. Appellant argued that his rights under the Confrontation Clause were violated when the trial court allowed an officer who had downloaded data from his vehicle's Black Box to testify, although the officer was unable to testify to the truth of the data's statements. *Id.* at 827–28. In *Trejo*, relying on *Bullcoming*, we held the trial court did not err because "the State called the analyst who generated the collision data report to testify to the truth of its contents and to be available for cross-examination, thereby satisfying the requirements of the Sixth Amendment right to confront adverse

---

[3] SAPD patrol supervisor Bianca Martinez, who was the State's crash reconstructionist, testified that although the data from Del Toro's vehicle's Black Box was downloaded, the "data is not used in [her] calculations."

witnesses." *Id.*; *see also Boutang v. State*, 402 S.W.3d 782, 788 (Tex. App.—San Antonio 2013, pet. ref'd).

Just like in *Trejo*, Coronado, who generated the report from the Black Box, was available at trial and subject to cross-examination by Del Toro's counsel. Coronado admittedly did not testify to the veracity of the data's conclusions, only to what the report stated, and the trial court admonished him accordingly. We overrule Del Toro's third and final issue.

### CONCLUSION

We overrule Del Toro's appellate issues and affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

PUBLISH